UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT KUIKEN,

                    Plaintiff,

          -v-                          6:22-CV-1157

COUNTY OF HAMILTON,
MICHAEL TRACY, SEAN O'BRIEN,
J.W. LOOMIS, JOHN DOE(S), and
JANE DOE(S),

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

BOSMAN LAW FIRM, LLC            AJ BOSMAN, ESQ.
Attorneys for Plaintiff         ROBERT J. STRUM, ESQ.
3000 McConnellsville Road
Blossvale, NY 13308

MURPHY BURNS LLP                STEPHEN M. GROUDINE, ESQ.
Attorneys for Defendants County of   THOMAS K. MURPHY, ESQ.
    Hamilton, Sean O'Brien
    and J.W. Loomis
407 Albany Shaker Road
Loudonville, NY 12211

O'CONNOR FIRST                  MARC J. KAIM, ESQ.
Attorneys for Defendant Michael
    Tracy
20 Corporate Woods Blvd.
P.O. Box 208
Albany, NY 12211

## DECISION and ORDER

## I. INTRODUCTION

On October 19, 2022, plaintiff Robert Kuiken ("Kuiken" or "plaintiff") filed this action against defendants County of Hamilton (the "County"), Michael Tracy ("Tracy"), Deputy Sean O'Brien ("Deputy O'Brien"), Deputy J.W. Loomis ("Deputy Loomis"), John Doe(s), and Jane Doe(s) in the County of Hamilton Supreme Court. *See* Dkt. No. 2.

On November 7, 2022, the County removed this action to federal court. *See* Dkt. No. 1.  Thereafter, Kuiken amended his complaint as of right.  Dkt. No. 8.  Plaintiff's four-count amended complaint asserts an equal protection claim under 42 U.S.C. § 1983, as well as state law claims for defamation, tortious interference with business relations,[1] and violation of New York Civil Rights Law § 79-n.

On December 16, 2022, the County, Deputy Loomis, and Deputy O'Brien (the "County defendants") moved to dismiss the amended complaint under Rule 12(b)(6).[2]  Dkt. No. 13.  The motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

---

[1] Although Kuiken refers to this claim as "tortious interference with a business relationship," this claim is more commonly referred to as a "tortious interference with business relations" or "tortious interference with prospective economic advantage."  *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015).

[2] Defendant Tracy has not moved to dismiss the amended complaint.  Rather, Tracy has filed an answer.  *See* Dkt. No. 18.

## II. __BACKGROUND__

Since 1981, Kuiken has been a member of the Speculator Ambulance Corps, Inc. ("Speculator Ambulance").  Compl. ¶ 13.  At 83 years old, plaintiff was the oldest member of Speculator Ambulance.  *Id.* ¶¶ 6, 13.  Plaintiff always performed his duties in a competent manner.  *Id.* ¶ 15.  However, plaintiff alleges that defendants perceived him as "too old" or infirm to perform his duties.  *Id.*

On at least two occasions prior to July 1, 2021, defendant Tracy, another member of Speculator Ambulance, undermined Kuiken's authority.  Compl. ¶ 15.  On these occasions, while at the site of an emergency, plaintiff informed dispatch that an ambulance was needed.  *Id.*  Tracy objected and told dispatch that he was en route and would assess the situation himself.  *Id.*  Upon arriving at the scene, Tracy chose to summon an ambulance as plaintiff had originally advised.  *Id.*

It is traditional and customary that the most senior member who responds to an emergency call is deemed in charge of the scene.  Compl. ¶ 15.  As such, defendant Tracy's act of overriding Kuiken's decision to dispatch an ambulance usurped plaintiff's authority.  *Id.*  Tracy's conduct interfered with plaintiff's ability to respond to emergencies and service the ill and injured members of his community.  *Id.*

On July 17, 2021, Speculator Ambulance was dispatched to the scene of a medical emergency.  Compl. ¶ 16.  Kuiken and defendant Tracy, in response to the call, both drove their personal vehicles to the site of the emergency.  *Id.*  En route, Tracy drove behind plaintiff.  *Id.*  Although Tracy never said anything to plaintiff, it would later turn out that Tracy accused plaintiff of driving recklessly.  *Id.* ¶ 17.

In particular, as defendant Tracy was leaving the site of the emergency, he conversed with defendant Deputy O'Brien, a Deputy Sheriff with the Hamilton County Sheriff's Office.  Compl. ¶¶ 10, 18.  Tracy falsely accused Kuiken of speeding and reckless driving.  *Id.* ¶ 18.  Tracy and Deputy O'Brien prepared a statement for Tracy to sign that accused plaintiff of failing to yield the right of way to Tracy while traveling to the emergency.  *Id.*  Tracy's statement also accused plaintiff of "crossing over several double yellow lines on blind corners and traveling at an excessive rate of speed."  *Id.*

Notably, defendant Tracy did not report Kuiken's reckless driving to a supervisor.  Compl. ¶ 20.  As plaintiff explains, Speculator Ambulance has a para-military command structure, comprised of a Captain and Lieutenant. *Id.*  According to the amended complaint, Tracy made his false report to defendant Deputy O'Brien without seeking approval to do so from either the Captain or Lieutenant.  *Id.*

The following day, July 18, 2021, Kuiken was dispatched to respond to another medical emergency.  Compl. ¶ 21.  Plaintiff's vehicle is equipped with an EMS emergency light and his license bears his last name, "Kuiken."  *Id.* As plaintiff was traveling to the scene of the emergency, defendant Deputy Loomis, a Deputy Sheriff with the Hamilton County Sheriff's Office, was traveling in the opposite direction.  *Id.* ¶¶ 11, 22.  Deputy Loomis made a U-turn and began following plaintiff.  *Id.* ¶ 22.  Upon information and belief, Deputy Loomis knew that plaintiff was on his way to the site of an emergency and waited nearby with the intent to pull him over.  *Id.*  Deputy Loomis followed plaintiff to the scene of the emergency and proceeded to pull plaintiff over.  *Id.*  Deputy Loomis refused to allow plaintiff to exit his vehicle to respond to the emergency until plaintiff provided his license and registration. *Id.*

Shortly after Kuiken was stopped by defendant Deputy Loomis, defendant Deputy O'Brien arrived at the scene.  Compl. ¶ 23.  After a short chat, the two officers agreed to charge plaintiff with offenses based on the information that defendant Tracy had provided to Deputy O'Brien the day before.  *Id.*

Defendant Deputy Loomis returned to Kuiken's vehicle and told him that he was just "written up last night."  Compl. ¶ 24.  This apparently was a reference to defendant Tracy's accusation that plaintiff was driving recklessly

the day prior. *Id.* Deputy Loomis then issued plaintiff a ticket for traffic law offenses. *Id.*

Thereafter, Kuiken complained to Karl Abrams ("Sheriff Abrams"), the Hamilton County Sheriff, about the conduct of defendants Deputy Loomis and Deputy O'Brien. Compl. ¶ 27. Sheriff Abrams showed plaintiff the written statement signed by defendant Tracy that accused plaintiff of speeding and reckless driving on July 17, 2021. *Id.* Plaintiff requested that Sheriff Abrams retrieve the video footage from the Fire Department which would have captured the times that plaintiff passed by en route to the emergency call and the time that Tracy passed by on his way to the call. *Id.* ¶ 28. According to plaintiff, the video would have shown that Tracy was far behind plaintiff and thus, the statement prepared by Tracy and Deputy O'Brien was false. *Id.* Sheriff Abrams dismissed plaintiff's complaints and refused to investigate. *Id.* Sheriff Abrams also refused to provide plaintiff with Tracy's statement. *Id.*

Kuiken pleaded not guilty to the traffic offenses and was not convicted of the offenses charged against him. Compl. ¶ 29. The charges were resolved on or about May 24, 2022, by agreement. *Id.* Plaintiff pleaded guilty to parking violations. *Id.*

Kuiken was terminated from his membership with Speculator Ambulance on the basis of the statements, charges, and conduct of defendants Tracy,

Deputy O'Brien, and Deputy Loomis.  Compl. ¶ 30.  In early 2022, plaintiff was asked to surrender his equipment and has not been summoned to any emergencies since.  *Id.*

### III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  **DISCUSSION**

Kuiken's four-count amended complaint asserts one federal claim and three state law claims.  *See* Compl. ¶¶ 35–46.  Plaintiff's federal law claim, an equal protection claim under 42 U.S.C. § 1983, is asserted against defendants Tracy, Doe(s), Deputy O'Brien, Deputy Loomis, and the County.  *Id.*  Plaintiff's state law claims include: (1) defamation against Tracy; (2) tortious interference with business relations against Tracy, Deputy O'Brien, and Deputy Loomis; and (3) New York Civil Rights Law § 79-n against Tracy, Deputy O'Brien, and Deputy Loomis.  *Id.*  The County defendants seek dismissal of all claims asserted against them—equal protection under 42 U.S.C. § 1983, tortious interference with business relations, and New York Civil Rights Law § 79-n.  *See* Defs.' Mem., Dkt. No. 13-3 at 7.

### A.  **Equal Protection under 42 U.S.C. § 1983** (Count 3)

The County defendants seek dismissal of Kuiken's equal protection claim under 42 U.S.C. § 1983 for failure to state a claim.  Defs.' Mem. at 13–20.  This claim is asserted against defendants Tracy, Doe(s), Deputy O'Brien, Deputy Loomis, and the County.  *See* Compl. ¶¶ 41–43.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any persons within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  This Constitutional provision is "essentially a direction that all persons similarly situated be

treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

"There are a number of common methods for pleading an equal protection claim." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 523 (N.D.N.Y. 2018).  First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.'" *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (quoting *Brown v. City of Oneida*, 221 F.3d 329, 337 (2d Cir. 1999)).  Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *City of Oneida*, 221 F.3d at 337 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886)).  Third, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Floyd*, 959 F. Supp. 2d at 570 (citation omitted).  Under these three theories, a plaintiff "must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (cleaned up); *see also Keles v. Davalos*, --F. Supp. 3d--, 2022 WL 17495048, at *13 (E.D.N.Y. Nov. 23, 2022).

In this case, Kuiken acknowledges that "age and perceived disability are not suspect classes."  Pl.'s Opp'n, Dkt. No. 14 at 16; *see also Fierro v. City of N.Y.*, 2022 WL 428264, at *8 (S.D.N.Y. Feb. 10, 2022) (noting that "neither age nor disability are suspect or quasi-suspect classes under the Equal

Protection Clause.").  As such, the first three theories of relief are inapplicable to plaintiff's § 1983 claim.  *See Publicola v. Lomenzo*, 2022 WL 1027099, at *17 (N.D.N.Y. Apr. 5, 2022).

Nevertheless, "[w]here there is no allegation of membership in a protected class, the plaintiff may still prevail on either a 'class of one' or 'selective enforcement' theory."  *Brown v. Griffin*, 2019 WL 4688641, at *4 (S.D.N.Y. Sept. 25, 2019).  Pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a plaintiff may assert a "class of one" claim by alleging that "they were intentionally treated different from others similarly situated and that there was no rational basis for this difference in treatment."  *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 558 (S.D.N.Y. 2006).  Alternatively, pursuant to *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), a plaintiff may assert a "selective enforcement" claim by showing they were treated differently based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.  *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 301 (S.D.N.Y. 2013) (citations omitted).

Kuiken's opposition to the County defendants' motion to dismiss makes clear that plaintiff is asserting a selective enforcement claim.[3]  To prevail on a selective enforcement claim:

> a plaintiff must prove that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Hu v. City of N.Y.*, 927 F.3d 81, 91 (2d Cir. 2019) (cleaned up).

To meet the first prong, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).  "They need not, however, be 'identical.'" *Hu*, 927 F.3d at 96 (quoting *Daikin Am. Inc.*, 756 F.3d at 230).  Rather, "[a] plaintiff can prevail by showing that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (cleaned up).  Due to the fact-intensive nature of this inquiry, the Second Circuit has "cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Id.* at 97 (citation omitted).

---

[3] Kuiken refers to his claim as a "selective prosecution claim."  Pl.'s Opp'n at 21.  A selective enforcement claim is also referred to as a selective prosecution claim. *White v. City of N.Y.*, 206 F. Supp. 3d 920, 930 (S.D.N.Y. 2016).

Kuiken alleges that "[n]on-elderly, non-disabled members of the Speculator Ambulance are not subjected to traffic stops by members of the Hamilton County Sheriff's Office when responding to emergency calls or otherwise criminally prosecuted."  Compl. ¶ 25.  According to plaintiff, "[i]t is unprecedented for a first responder in the Speculator Volunteer Ambulance Corps. to be pulled over by a member of the Hamilton County Sheriff's Office *en route* to a call."  *Id.* ¶ 26.

Taken as true, these allegations satisfy the first prong of a selective enforcement claim.  Kuiken has plausibly alleged the existence of comparators who are similarly situated, namely, other members of Speculator Ambulance.  Plaintiff has also sufficiently demonstrated differential treatment from such comparators by the Hamilton County Sheriff's Office for the same conduct, that is, responding to emergency calls.

Nonetheless, a plaintiff "cannot merely rest on a showing of disparate treatment."  *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (citation omitted).  To satisfy the second prong of a selective enforcement claim, a plaintiff "must prove that the disparate treatment was *caused by* the impermissible motivation."  *Id.*  "As evident from *LeClair*'s broad definition of 'impermissible considerations,' *LeClair* protects against both discrimination on the basis of a plaintiff's protected status (*e.g.*, race or a constitutionally-

protected activity) and discrimination on the basis of a defendant's personal malice or ill will towards a plaintiff." *Hu*, 927 F.3d at 91.

As noted *supra*, "neither age nor disability are suspect or quasi-suspect classes under the Equal Protection Clause." *Fierro*, 2022 WL 428264, at *8. Thus, if Kuiken's claim is to proceed, it must be based on the theory that the County defendants acted with "personal malice or ill will" toward him. *See Ramirez v. Town of Oxford*, 2022 WL 3646203, at *8 (D. Conn. Aug. 24, 2022).

Kuiken asserts that "[d]efendants acted with ill will toward [him] because of his age and disability and/or perceived disability." Compl. ¶ 42. According to plaintiff, although he "always performed his duties in a competent manner," he was nevertheless "perceived by [d]efendants as 'too old' or infirm to perform his duties as a member of the Speculator Ambulance Corps." *Id*. ¶ 15. Thus, plaintiff maintains that "the charges [against him] were the product of age-related bias and concerted action" of the defendants. *Id*. ¶¶ 15, 32.

Upon review, Kuiken has plausibly alleged the second prong of a selective enforcement claim. Granted, plaintiff's allegations are thin, and discovery may reveal that the County defendants' actions were not motivated by any improper purpose. However, in drawing all reasonable inferences in plaintiff's favor, plaintiff has sufficiently alleged that the County defendants'

actions were motivated by "personal malice or ill will."  Accordingly, plaintiff has plausibly alleged an equal protection claim under § 1983.[4]

Nevertheless, whether Kuiken has plausibly alleged this claim against the County itself demands another inquiry.  The County defendants argue that plaintiff's municipal liability claim must be dismissed because it is framed in wholly conclusory terms.  Defs.' Mem. at 18–20.  In opposition, plaintiff responds that the amended complaint plausibly alleges that Sheriff Abrams "ordered or ratified" the actions of his subordinates; *i.e.*, he refused to investigate plaintiff's complaint of misconduct.  Pl.'s Opp'n at 24–26.  According to plaintiff, the "involvement" of this final policymaker relieves him of the obligation to plead any custom, policy, or practice because even a single instance of misconduct by a policymaker can be sufficient to give rise to municipal liability.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault."  *Dukes v. City of Albany*, 492 F. Supp. 3d 4, 11 (N.D.N.Y. 2020) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996));

---

[4]  County defendants maintain that Kuiken's equal protection claim fails "as there was undisputed probable cause for the tickets."  Defs.' Mem. at 17; Defs.' Reply, Dkt. No. 15 at 8.  However, the cases on which defendants rely do not warrant dismissal of plaintiff's claim.  One of the cases cited does not discuss an equal protection claim.  *See Sullivan v. City of N.Y.*, 690 F. App'x 63, 67 (2d Cir. 2017) (summary order).  Two of the cases cited discussed whether an equal protection claim was barred in the context of a summary judgment motion.  *See Forbes v. City of N.Y.*, 2018 WL 1882842 (E.D.N.Y. Apr. 19, 2018); *Mesa v. City of N.Y.*, 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013).  The remaining case dismissed the plaintiff's equal protection claim on other grounds.  *See Bar-Levy v. Mitchell*, 2022 WL 14746399 (S.D.N.Y. Oct. 25, 2022).

*see also Heck v. Humphrey*, 512 U.S. 477, 483 (1994) ("We have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability.").

Although the precise state-of-mind requirement necessary to win relief varies depending on the type of constitutional claim a plaintiff has alleged, *Brandon v. Kinter* 938 F.3d 21, 38 (2d Cir. 2019), a successful § 1983 claim holds an individual personally responsible for the role his or her own acts or omissions played in violating someone's constitutional rights, *Ashcroft*, 556 U.S. at 676 (requiring plaintiff to show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

"That is why an award of § 1983 money damages against an individual defendant is executed against the official's personal assets." *Dukes*, 492 F. Supp. 3d at 12 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  That is also why a municipality cannot be held liable under § 1983 merely because it happened to employ the tortfeasor.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  Instead, under § 1983 "local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

As the Supreme Court has explained, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* at 60 (quoting *Monell*,

436 U.S. at 691).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to actually have the force of law."  *Id.*

This "official policy" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality."  *Pembaur*, 475 U.S. at 479.  Stated differently, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see also Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992) ("Liability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's actions must implement rather than frustrate the government's policy.").

"In *Monell* itself, it was undisputed that there had been an official policy requiring city employees to take actions that were unconstitutional."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Pembaur*, 475 U.S. at 481 (explaining that *Monell* "involved a written rule requiring pregnant employees to take unpaid leaves of absence before such leaves were medically necessary").  However, "[a] municipal policy may be pronounced or tacit and reflected in either action or inaction."  *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *see also Hu*, 927 F.3d at 104 ("An official municipal policy can take a variety of forms.").  As the Second Circuit has explained:

> The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality, *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); (2) actions directed by the government's "authorized decisionmakers" or "those who establish governmental policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, *see Turpin*, 619 F.2d at 199; or (4) a "constitutional violation[ ] resulting from [policymakers'] failure to train municipal employees," *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).

*Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (summary order).

In this case, Kuiken contends that he has plausibly alleged a *Monell* claim based on the conduct of a final policymaker: Sheriff Abrams. Plaintiff alleges he complained directly to Sheriff Abrams about the incident with defendants Deputy Loomis and Deputy O'Brien. Plaintiff further alleges that Sheriff Abrams refused to investigate his subordinates' alleged misconduct. Thus, plaintiff argues, he has plausibly alleged that Sheriff Abrams "ratified" the unconstitutional conduct of Deputy Loomis and/or Deputy O'Brien.

Where, as here, a plaintiff alleges that a low-level municipal official or other non-decisionmaker committed the constitutional violation in question, the plaintiff "must show that the decisionmaker ordered or ratified such a subordinate's conduct or 'was aware of a subordinate's unconstitutional

actions, and consciously chose to ignore them, effectively ratifying the actions.'" *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).  In other words, a "municipal policymaking official's 'deliberate indifference' to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under Section 1983." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  "Liability for deliberate indifference can be based upon a failure to train or a failure to supervise or discipline." *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021) (citing *Amnesty Am.*, 361 F.3d at 127).

Measured against this general body of law, Kuiken's municipal liability claim must be dismissed.  To be sure, a single act by a final policymaker may be "sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983." *Amnesty Am.*, 361 F.3d at 126.  But plaintiff has not alleged that Sheriff Abrams committed any "single act" that amounted to a constitutional violation.  Instead, plaintiff alleges that defendants Deputy O'Brien and Deputy Loomis violated his constitutional right to equal protection.  Plaintiff further alleges that he later reported this instance of alleged misconduct to Sheriff Abrams, who refused to investigate it to plaintiff's satisfaction.

This "one-off instance of 'ratification and approval'" does not plausibly suggest the kind of persistent municipal inaction necessary to support a finding of deliberate indifference. *Waller v. City of Middletown*, 89 F. Supp. 3d 279, 287 n.3 (D. Conn. 2015). As courts have held, a singular, isolated event—a failure to discipline a subordinate for misconduct—is insufficient to permit *Monell* liability. *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 325 (W.D.N.Y. 2021) (opining that a "single instance" of alleged ratification of a subordinate's misconduct is insufficient); *Santiago v. City of Rochester*, 481 F. Supp. 3d 152, 160 (W.D.N.Y. 2020) (rejecting *Monell* claim based on municipality's failure to investigate or discipline employee for isolated instance of alleged misconduct); *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 475 (W.D.N.Y. 2017) (substantially same); *Searles v. Pompilio*, 652 F. Supp. 2d 432, 445 (S.D.N.Y. 2009) (holding that single incident was insufficient to give rise to inference of deliberate indifference absent other evidence of municipal policy or practice).

To be sure, the Supreme Court has affirmed the "viability, in limited circumstances, of the 'single-incident' theory of liability envisioned in the Court's prior *Canton* decision." *Boston v. Suffolk Cnty.*, 326 F. Supp. 3d 1, 17 (E.D.N.Y. 2018). But the single-incident theory is a narrow exception to the general rule. "To hold a municipality liable under Section 1983 without proof of a pre-existing pattern of violations, 'the unconstitutional consequences of

failing to train' must be 'patently obvious' and an actual violation of constitutional rights must be a 'highly predictable consequence' of the failure to train." *Waller*, 89 F. Supp. 3d at 285 (quoting *Connick*, 563 U.S. at 67).

The allegations in the amended complaint do not fit within this narrow window of single-incident liability.  Nor does the pleading otherwise plausibly allege that a municipal policy *caused* the constitutional injury he has actually identified; *i.e.*, the equal protection violation.  To conclude otherwise would collapse municipal liability into supervisory liability: a single instance in which a supervisor (here, the Sheriff) failed to investigate a complaint of isolated employee misconduct (here, his Deputies) would become actionable as the "official policy" of the municipality.  *See Connick*, 563 U.S. at 70.

That is not the law.  "*Monell* does not provide a separate cause of action for the failure by the government to train [or supervise or discipline] its employees; it *extends* liability to a municipal organization where that organization's failure to train [or supervise or discipline], or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).  Because Kuiken has not plausibly alleged that any conduct attributable to Sheriff Abrams in his role as final policymaker could fairly be said to have *caused* the underlying equal protection violation he has alleged, plaintiff's municipal liability claim must be dismissed.

**B.  State Law Claims (Counts 2 & 4)**

The County defendants seek dismissal of Kuiken's tortious interference with business relations and New York Civil Rights Law § 79-n state law claims.  *See* Defs.' Mem. at 7-13.  These claims are asserted against defendants Deputy O'Brien and Deputy Loomis.  *See* Compl. ¶¶ 38–40, 44–46.

**1.  Notice of Claim**

As a threshold matter, the County defendants maintain that both state law claims must be dismissed because Kuiken has failed to file a notice of claim as required by New York County Law § 52 ("County Law § 52") and New York General Municipal Law § 50 ("General Municipal Law § 50").  Defs.' Mem. at 7–10.

"The general rule in federal court is that 'state notice-of-claim statutes apply to state-law claims.'"  *Carter v. Broome Cnty.*, 394 F. Supp. 3d 228, 246 (N.D.N.Y. 2019) (citing *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)).  County Law § 52 requires the filing of a notice of claim for claims "against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . ."  N.Y. COUNTY LAW § 52.  County Law § 52 also "incorporates the notice of claim requirements contained in General Municipal Law §§ 50-e and 50-i", and

"broadens their scope." *Cooper Crouse-Hinds, LLC v. City of Syracuse, N.Y.*, 2018 WL 840056, at *10 (N.D.N.Y. Feb. 12, 2018).

General Municipal Law § 50-e provides the procedural mechanism for filing a notice of claim when required, and General Municipal Law § 50-i sets forth the kinds of actions which will trigger the requirement to provide a municipality with a notice of claim. *Keles v. Yearwood*, 254 F. Supp. 3d 466, 471 (E.D.N.Y. 2017). Pursuant to New York General Municipal Law § 50-e, a plaintiff who asserts a state law tort claim against a municipal entity must file a notice of claim within ninety days after the incident giving rise to the claim. *Endemann v. City of Oneida, N.Y.*, 2020 WL 1674255, at *6 (N.D.N.Y. Apr. 6, 2020) (citation omitted). General Municipal Law § 50-i "provides that the tort actions that trigger the notice of claim requirement are actions for 'personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of . . . negligence or wrongful act.'" *Keles*, 254 F. Supp. 3d at 471.

Kuiken's state law claims against the County defendants are not against the County itself, but rather against municipal employees, Deputy O'Brien and Deputy Loomis. *See* Compl. ¶¶ 38–40, 44–46. Even so, the requirements of General Municipal Law §§ 50-e and 50-i apply with equal force to state law claims against municipal employees. *Carter*, 394 F. Supp. 3d at 247 (citation omitted). "However, service of a notice of claim upon an employee of a

municipality is not a condition precedent to the commencement of an action against such person unless the municipality is required to indemnify such person." *Id.* (cleaned up). "In other words, the notice prerequisite does not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness." *Id.* (cleaned up).

Kuiken does not assert that he filed a notice of claim against defendants Deputy O'Brien and Deputy Loomis. *See* Pl.'s Opp'n at 10–12. Instead, plaintiff maintains that because the conduct against Deputy O'Brien and Deputy Loomis "constitutes intentional wrongdoing," "no Notice of Claim is required" to advance his state law claims. *Id.* at 10. In support of this argument, plaintiff points to the allegations in his amended complaint. *Id.*

In asserting his tortious interference with business relations claim, Kuiken alleges that defendants Deputy O'Brien and Deputy Loomis "intentionally interfered with a business relationship" plaintiff had with Speculator Ambulance. Compl. ¶ 39. With respect to his New York Civil Rights Law § 79-n claim, plaintiff asserts that Deputy O'Brien and Deputy Loomis "intentionally harmed [him] and caused him injury and harm . . . in whole or in substantial part because of a belief or perception regarding [his] age and disability and/or perceived disability." *Id.* ¶ 45.

Accepting these allegations as true, and drawing all reasonable inferences in Kuiken's favor, defendants Deputy O'Brien and Deputy Loomis' conduct may reasonably be understood as amounting to "intentional wrongdoing or recklessness." As such, the County defendants' conduct would necessarily fall outside the scope of their employment.

"[I]n any event, the question of whether an act was committed outside the scope of employment is a 'fact-sensitive one' that is a poor candidate for resolution at the motion to dismiss stage." *Tulino v. City of N.Y.*, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (citing *Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 736 (S.D.N.Y. 2012). Accordingly, Kuiken's state law claims shall not be dismissed for failure to file a notice of claim.[5]

### 2. <u>Tortious Interference with Business Relations</u>

Next, the County defendants seek dismissal of Kuiken's tortious interference with business relations claim for failure to state a claim. Defs.' Mem. at 11–12.

To prevail on a claim for tortious interference with business relations, "a plaintiff must show that (1) the plaintiff had business relations with a third

---

[5] The County defendants also assert that Kuiken's state law claims are untimely pursuant to General Municipal Law § 50–i. Defs.' Mem. at 9–10. The Second Circuit has held that when a plaintiff sues a municipality, or an individual whom the municipality must indemnify, General Municipal Law § 50–i's 1 year and 90-day statute of limitations applies. *Jones v. City of Mount Vernon*, 2023 WL 2118026, at *4 (S.D.N.Y. Feb. 17, 2023) (collecting cases). Because it is uncertain whether Deputy O'Brien and Deputy Loomis acted within the scope of their employment at this stage of the litigation, dismissal on this ground is inappropriate.

party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (cleaned up).

The County defendants do not dispute that Kuiken has properly alleged the first or fourth elements of a tortious interference with business relations claim. *See* Defs.' Mem. at 11–12. Rather, the County defendants argue that plaintiff has failed to sufficiently allege the second and third elements—that the County defendants interfered with plaintiff's business relations and "acted for a wrongful purpose or used dishonest, unfair, or improper means." *Id.*

To successfully plead the second element of a tortious interference with business relations claim, a plaintiff is required to "demonstrate 'direct interference with a third party, that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff.'" *ValveTech, Inc. v. OHB Sys. AG*, 2023 WL 24056, at *13 (W.D.N.Y. Jan. 3, 2023) (citing *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 82 (S.D.N.Y. 2012)).

The County defendants argue that Kuiken has failed to allege that they interfered directly with the third party in question; *i.e.* Speculator Ambulance. Defs.' Mem. at 12. According to the County defendants, "the

- 25 -

alleged conduct was directed at the plaintiff alone," and "no allegedly improper actions/inactions" were directed towards Speculator Ambulance. *Id.*

In opposition, Kuiken maintains that he has satisfied this requirement by alleging that he was "constructively terminated from his membership with [Speculator Ambulance] on the basis of the false statements, charges, and conduct of" defendants Deputy O'Brien and Deputy Loomis.  Pl.'s Opp'n at 14; *see also* Compl. ¶ 30.

For purposes of this motion to dismiss, Kuiken's allegations are sufficient. Granted, plaintiff's allegations are arguably conclusory and do not provide specifics as to the interactions between the County defendants and Speculator Ambulance.  However, at this stage of litigation, it is necessary to accept plaintiff's allegations as true and draw all reasonable inferences in his favor.  According to this standard, plaintiff has plausibly alleged that the County defendants directed conduct towards Speculator Ambulance.

Under the third element of a tortious interference with business relations claim, "[t]he conduct directed at the third-party must 'amount to a crime or an independent tort, or some 'wrongful means,' or the defendant must have acted 'solely out of malice.'"  *Pride Techs., LLC v. Khublall*, 2021 WL 3668085, at *3 (S.D.N.Y. Aug. 17, 2021), *aff'd*, 2022 WL 17587755 (2d Cir. Dec. 13, 2022).  "Wrongful means" includes physical violence, fraud or

misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure. *Adecco USA, Inc. v. Staffworks, Inc.*, 2022 WL 16571380, at *9 (N.D.N.Y. Nov. 1, 2022) (citing *Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, 507 F. Supp. 3d 547, 566 (S.D.N.Y. 2020)).

The County defendants argue that Kuiken has failed to plausibly allege that the County defendants' act of "pulling over the plaintiff and issuing him a ticket for vehicle and traffic law offenses was done 'solely out of malice, or used dishonest, unfair, or improper means.'"[6] Defs.' Mem. at 12.

Kuiken alleges that he has sufficiently demonstrated the third element by alleging that the County defendants "were motivated by an intent to discriminate against [him] because of his age and perceived disability and did so solely for such impermissible reasons." Pl.'s Opp'n at 13. Indeed, plaintiff has alleged that the charges against him, which were based on false information provided by defendant Tracy, were the product of age-related bias and concerted action of defendants Tracy, Deputy Loomis, and Deputy O'Brien. Compl. ¶¶ 23, 32.

While these allegations are vague, they are nonetheless sufficient at this stage of the litigation. Drawing all reasonable inferences in favor of Kuiken, he has plausibly alleged that the County defendants were not merely relying

---

[6] The County defendants also maintain that Kuiken cannot demonstrate this element because of an "undisputed finding of probable cause . . . ." Defs.' Mem. at 11–12. However, the County defendants have failed to support this argument with any legal basis.

in good faith on defendant Tracy's false statements, but rather that they "acted for a wrongful purpose or used dishonest, unfair, or improper means." Accordingly, the County defendants' motion to dismiss this claim shall be denied.

### 3.  New York Civil Rights Law § 79-n

The County defendants also seek dismissal of Kuiken's New York Civil Rights Law § 79-n claim for failure to state a claim.  Defs.' Mem. at 12–13.

New York Civil Rights Law § 79-n creates a civil cause of action for "[a]ny person who intentionally selects a person or property for harm or . . . causes physical injury or death to another" because of a "belief or perception" regarding their, *inter alia*, age or disability.  N.Y. CIV. RIGHTS LAW § 79-n(2). New York Civil Rights Law § 79-n is a relatively new law, and, as such, there is little guidance as to its applicability.  *Doe v. AR*, 2022 WL 1624081, at *13 (W.D.N.Y. May 23, 2022) (citation omitted).  Nonetheless, the legislative history of the statute indicates that it applies only to bias-related violence or intimidation.  *Karam v. Cnty. of Rensselaer, N.Y.*, 2016 WL 51252, at *18 (N.D.N.Y. Jan. 4, 2016); *see also Le v. Triza Elec. Corp.*, 2020 WL 1274977, at *3 (E.D.N.Y. Mar. 16, 2020).

The County defendants argue that Kuiken has failed to plausibly allege that defendants Deputy O'Brien or Deputy Loomis engaged in acts of "violence or intimidation."  Defs.' Mem. at 12.  In opposition, plaintiff

maintains that both Deputy O'Brien and Deputy Loomis "are alleged to have directly participated in the intimidating conduct," of intentionally selecting plaintiff "for harm by targeting him for arrest and prosecution because of his age and perceived disability." Pl.'s Opp'n at 17; *see also* Compl. ¶ 45.

For purposes of this motion to dismiss, Kuiken's allegations are adequate. Discovery may well reveal that the County defendants did not engage in any acts of "violence or intimidation." However, at this early stage of the litigation, plaintiff has plausibly alleged that the County defendants selected plaintiff for harm based on a "belief or perception" regarding his age or disability. Accordingly, the County defendants' motion to dismiss this claim shall be denied.[7]

## C. **Doe Defendants**

As a final matter, Kuiken's amended complaint names John Doe(s) and Jane Doe(s) as defendants. *See* Compl. ¶¶ 41–43. "Courts 'typically resist dismissing suits against the John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials.'" *Lapoint v. Vasiloff*, 2016 WL 951566, at *5 (N.D.N.Y. Mar. 9, 2016) (quoting

---

[7] The County defendants request that punitive damages be disallowed against the County and individual defendants Deputy Loomis and Deputy O'Brien. As determined *supra*, Kuiken's equal protection claim, the only claim against the County, is dismissed as against the County. With respect to the individual defendants, punitive damages are available against municipal officials named in their individual capacities. *Girard v. Howard*, 2021 WL 1737758, at *5 (W.D.N.Y. May 3, 2021) (citations omitted). Because plaintiff has stated a claim against Deputy O'Brien and Deputy Loomis in their individual capacities, "there is no cause to dismiss the demand for punitive damages at this stage." *Villar v. Cnty. of Erie*, 2020 WL 33125, at *10 (W.D.N.Y. Jan. 2, 2020).

*Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)). "However, the plaintiff is ultimately required to identify each defendant by name, or else identify them as the John Doe Defendants and provide sufficient factual basis to allow the defendants to successfully identify the John Doe Defendants and prepare for a defense." *Id.* (cleaned up). Here, plaintiff's amended complaint fails to allege any information specific to the identities or actions of the Jane Doe(s) and John Doe(s) defendants. As a result, the Jane Doe(s) and John Doe(s) must be dismissed without prejudice.

## V. <u>CONCLUSION</u>

Kuiken has plausibly alleged the following claims against defendants Deputy Loomis and Deputy O'Brien: tortious interference with business relations (Count Two), equal protection under 42 U.S.C. § 1983 (Count Three), and violation of New York Civil Rights Law § 79-n (Count Four). Defendant Tracy has answered plaintiff's amended complaint. Dkt. No. 18. As such, the following claims against Tracy remain: defamation (Count One), tortious interference with business relations claim (Count Two), equal protection under 42 U.S.C. § 1983 (Count Three), and violation of New York Civil Rights Law § 79-n (Count Four).

Therefore, it is

ORDERED that

1. The County of Hamilton's motion to dismiss is GRANTED;

2.  Plaintiff's equal protection claim under 42 U.S.C. § 1983 as against the County of Hamilton (Count Three) is DISMISSED;

3.  The County of Hamilton is DISMISSED as a defendant;

4.  The Jane Doe(s) and John Doe(s) are DISMISSED as defendants without prejudice;

5.  Defendants Deputy O'Brien and Deputy Loomis' motion to dismiss is DENIED;

6.  Defendants Deputy O'Brien and Deputy Loomis shall file and serve an answer to Counts Two, Three, and Four on or before Friday, April 28, 2023.

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.


Dated:  April 18, 2023
        Utica, New York.

David N. Hurd
U.S. District Judge