**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT KUIKEN,

               Plaintiff,

      -v-

                                     6:22-CV-01157 (AJB/MJK)

COUNTY OF HAMILTON; MICHAEL TRACY
SEAN O'BRIEN; J.W. LOOMIS; and
JOHN DOE(S) AND JANE DOE(S),

               Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

## I.    INTRODUCTION

On October 19, 2022, plaintiff Robert Kuiken ("plaintiff") filed this action in New York State Supreme Court, Hamilton County, pursuant to 42 U.S.C. § 1983 and state law, against defendants Michael Tracy ("Tracy"), County of Hamilton Sheriff's Deputies Sean O'Brien ("Deputy O'Brien") and J.W. Loomis ("Deputy Loomis") (collectively, the "Deputy defendants"), the County of Hamilton (the "County"), John Doe(s), and Jane Doe(s) (collectively, the "Doe defendants"). *See* Dkt. No. 2.

The County removed this action to federal court. *See* Dkt. No. 1. Then, Kuiken amended his complaint as of right. Dkt. No. 8. Plaintiff's amended complaint asserts a § 1983 equal protection claim against all defendants, state law claims for tortious interference with business relations and violations of New York Civil Rights Law § 79-n against all defendants, and a state law defamation claim against Tracy. *Id.*

In short, the amended complaint alleges that, on July 17, 2021, Tracy falsely accused plaintiff, a volunteer first responder, of speeding and driving recklessly while responding to an emergency, and that the Deputy defendants selectively enforced vehicle and traffic laws against plaintiff the next day by charging him with traffic offenses based on Tracy's false accusations.

The County and the Deputy defendants moved to dismiss plaintiff's claims against them. Dkt. No. 13.  While that motion was pending, Tracy answered plaintiff's amended complaint and asserted crossclaims against the Deputy defendants, the County, and the Doe defendants for common law contribution and indemnification.  *See* Dkt. No. 18.  United States District Court Judge David N. Hurd dismissed plaintiff's claims against the County and the Doe defendants, but denied the motion as to the Deputy defendants.  Dkt. No. 19.  Afterwards, the Deputy defendants answered the amended complaint, asserting reciprocal crossclaims against Tracy.  Dkt. Nos. 20–21.

On May 27, 2025, the Deputy defendants moved for summary judgment, followed by Tracy on May 30, 2025.  Dkt. Nos. 67–68.  Once the motions were fully briefed, Dkt. Nos. 74–75, 78–79, this matter was reassigned to this Court for all further proceedings.  Defendants' motions will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

Pursuant to Local Rule 56.1, the following facts are drawn from the parties' statements of material facts and the attached exhibits and are undisputed unless otherwise noted.

In July 2021, plaintiff was a certified first responder and a member of the Speculator Volunteer Ambulance Corps. ("SVAC") in the Village of Speculator, New York.  Dkt. No. 68-17 ("Tracy SMF") ¶ 1.  Plaintiff, then 82 years old, had been a member of SVAC for approximately 40 years.  Dkt. No. 74-7 ("Kuiken Aff.") at ¶¶ 3, 6.

At that time, Tracy worked as a critical care technician and supervisor with the Greater Amsterdam Volunteer Ambulance Corps. ("GAVAC"). Dkt. No. 68-18 ("Tracy Aff.") ¶ 3. In that capacity, "Tracy operated the advanced life support fly car" (the "GAVAC fly car"), an emergency vehicle equipped with lights, a siren, and emergency vehicle markings. Tracy SMF ¶¶ 49–50. Prior to that, Tracy was a volunteer member of SVAC from 1998 until 2020. Tracy Aff. at ¶ 6.

Tracy had known plaintiff for approximately 20 years through SVAC. Tracy SMF ¶ 97. Prior to July 18, 2021, plaintiff never perceived any animosity between himself and Tracy. *Id.* ¶ 38. "[O]n a couple of occasions, . . . Tracy asked [plaintiff] to move his car because it was in the way of [an] ambulance and . . . plaintiff cooperated with those requests." *Id.* ¶ 26. Plaintiff testified that Tracy had overridden his authority during at least two emergency calls, but that those incidents were "nothing worth fighting over." Lloyd Aff., Ex. A, Dkt. No. 68-2 ("Kuiken Dep.") at 86–89.

"Throughout [plaintiff]'s entire time with SVAC, Phillip Mulleedy served as the organization's President." Kuiken Aff. ¶ 9. Mulleedy was older than plaintiff. *Id.* Plaintiff had observed Tracy and others making derogatory remarks about Mulleedy's age in the past. Kuiken Dep. at 217–18. Plaintiff "assume[d] they did the same thing with [him]," though plaintiff never actually heard anyone at SVAC comment on his age. *Id.* at 218.

## A. July 17, 2021

On July 17, 2021, plaintiff received a transmission alerting him to a medical emergency at the Indian Lake Campground and Boat Launch (the "Boat Launch"). Tracy SMF ¶ 14. He responded to the Boat Launch in his personal vehicle. *Id.* ¶ 3. Plaintiff drove a white 2018 Chrysler 300 with a vanity license plate that read "KUIKEN" and a green "courtesy" light situated in the front windshield. *Id.* ¶¶ 3, 29; Kuiken Aff. ¶ 10.

According to SVAC policy, with prior written authorization, SVAC members may equip their personal vehicles with a green "courtesy" light.  Dkt. No. 68-1 ("Lloyd Aff.") ¶ 9, Ex. J, Dkt. No. 68-11 ("SVAC Policy Manual") at 8.  SVAC members are only permitted to activate their green courtesy light "when engaged in an emergency operation."  *Id.*  SVAC policy states that the use of a green courtesy light does not exempt members from complying with New York State Vehicle and Traffic Law, *id.*, but "plaintiff believed that the use of a green light while responding to an emergency allowed him to exceed the posted speed limit."  Tracy SMF ¶ 47.  Plaintiff's green courtesy light was activated when he drove to the Boat Launch on July 17, 2021.  Kuiken Aff. ¶ 11.

Tracy was also dispatched to the Boat Launch that day.  Tracy SMF ¶¶ 53–55.  He activated the emergency lights and siren on the GAVAC fly car and proceeded towards the Boat Launch on Route 30.  *Id.* ¶ 56.

The parties dispute what happened next.  According to Tracy, after traveling 100 to 200 feet, he saw plaintiff's vehicle turn onto Route 30 in front of him.  Tracy SMF ¶ 57.  Tracy did not see a green courtesy light in plaintiff's car and he "was not aware that plaintiff had a green light in that car."  *Id.* ¶ 59.  Tracy continued to follow plaintiff's vehicle for four or five miles before backing off.  *Id.* ¶ 60.  He backed off once the speedometer on the GAVAC fly car read 65 mph because he felt that 65 mph was excessive for that stretch of highway, which had several sharp curves.  *Id.* ¶ 61.  Tracy observed that plaintiff's vehicle continued to get farther ahead of the GAVAC fly car.  *Id.* ¶ 62.  According to Tracy, plaintiff's vehicle also crossed over the double yellow lines two or three times during the drive.  *Id.* ¶ 63.

Plaintiff maintains that he did not exceed 65 mph or cross over the double yellow lines at any point during his drive to the Boat Launch.  Kuiken Aff. ¶ 12.  Plaintiff later estimated that he

was driving 60 mph—5 mph over the posted speed limit of 55 mph—Kuiken Dep. at 122, but he "does not believe that he ever looked at the speedometer in his vehicle when he was responding to the . . . Boat Launch," Tracy SMF ¶ 39. Plaintiff also maintains that Tracy was not driving behind him on his way to the Boat Launch that day. Kuiken Aff. ¶ 12. According to plaintiff, he constantly checked his rearview mirror while driving to emergencies, and he was familiar with the GAVAC fly car, so he would have noticed if Tracy was behind him. *Id.*

It is undisputed that plaintiff was already at the Boat Launch when Tracy arrived. Tracy SMF ¶ 65. After Tracy completed his evaluation of the patient at the Boat Launch, he re-entered the GAVAC fly car and returned to the Speculator Volunteer Fire Department, where he had been stationed prior to the call. *Id.* ¶ 68. Upon his return, Tracy sent a text message to Deputy O'Brien's personal phone, expressing concerns about plaintiff's driving that day. Tracy SMF ¶ 69. Tracy was familiar with Deputy O'Brien because they had both been members of the Speculator Volunteer Fire Department, and the two had socialized with one another in the past. Dkt. No. 74-12 ("Pl.'s Add'l SMF") ¶ 150.

A short time later, Tracy met with Deputy O'Brien outside of the firehouse and provided a statement regarding his observations of plaintiff's driving that day. Tracy SMF ¶ 70. Those observations included that plaintiff drove at excessive rates of speed, crossed over several double yellow lines, and failed to yield to Tracy's right of way. Tracy Aff., Ex. B, Dkt. No. 68-20 at 1. Tracy indicated that he wished to pursue a criminal complaint against plaintiff. *Id.*; Dkt. No. 74-11 ("Deputies' SMF") ¶ 50. According to Tracy, Deputy O'Brien stated that he would speak to the Sheriff the next day to determine whether they could proceed with charges. Tracy Aff. ¶ 16. Deputy Loomis arrived while Deputy O'Brien was taking down Tracy's statement. Tracy SMF ¶ 71. Loomis advised Tracy to follow up with GAVAC and SVAC about his complaint. *Id.*

¶ 72; Dkt. No. 67-1 ("Groudine Aff."), Ex. B, Dkt. No. 68-4 ("Loomis Dep.") at 54.  "Neither Deputy Loomis nor Deputy O'Brien contacted anyone from [SVAC] regarding plaintiff or his driving."  Deputies' SMF ¶ 52.  According to Loomis, he also informed Tracy that "there was probably not a lot that the deputies were going to do with [his complaint]" because the deputies did not witness the alleged traffic infractions.  Tracy SMF ¶ 113; Loomis Dep. at 54.

After speaking to the Deputy defendants, Tracy informed his manager at GAVAC that he had reported a member of SVAC for unsafe driving.  Lloyd Aff., Ex. B, Dkt. No. 68-3 ("Tracy Dep.") at 78.  Tracy also informed the second in command at SVAC, Ken Kuhrt, that he had provided a statement to the Deputy defendants concerning plaintiff's driving.  Tracy Aff. ¶ 15. Since then, Tracy has never spoken with Kuhrt about plaintiff's driving, Tracy SMF ¶ 125, and Tracy has "never been interviewed by anyone associated with SVAC concerning [plaintiff]," *Id.* ¶ 86.

### B.  July 18, 2021

The next day, the Deputy defendants were on duty again.  Deputies' SMF ¶ 54. Sometime that morning, Deputy O'Brien informed Tracy that the Sheriff's Office would not be filing charges against plaintiff based on Tracy's complaint.  Tracy Aff. ¶ 18.  After that, Tracy and Deputy O'Brien did not speak about plaintiff again, though they remained in regular contact. Lloyd Aff., Ex. D, Dkt. No. 68-5, ("O'Brien Dep.") at 62; Tracy Dep. at 98–99, 137–38.

At around 4:48 p.m., Deputy Loomis was on patrol, driving east on Route 8 towards the Village of Speculator.  Deputies' SMF ¶ 55.  At that time, plaintiff was driving west on Route 8, heading out of Speculator.  *Id.* ¶¶ 56–57.  Plaintiff was responding to an emergency call in his personal vehicle with his green courtesy light activated.  *Id.*  Deputy Loomis observed plaintiff speeding and confirmed his observation with a radar speed check.  *Id.* ¶ 59.  Plaintiff claims that

he was driving 60 mph in a 55-mph zone when he first observed Deputy Loomis, Kuiken Dep. at 99, but according to Deputy Loomis, plaintiff was in a 40-mph zone and the radar indicated that he was driving 63 mph, Loomis Dep. at 74.  After Deputy Loomis confirmed plaintiff's excessive speed with the radar, he conducted a "U-Turn," activated his emergency lights, and attempted to conduct a traffic stop.  Deputies' SMF ¶ 60.

After that, the parties' narratives diverge.  Plaintiff claims he pulled over immediately so that Deputy Loomis could pass him.  Kuiken Dep. at 102–03.  According to plaintiff, he had assumed that Deputy Loomis was responding to the same call as him or responding to another emergency call.  *Id.*  When plaintiff realized that Deputy Loomis pulled over behind his car, plaintiff "stepped on the gas and . . . took off" before Loomis could exit his vehicle, because the emergency call plaintiff was responding to was three or four houses up the road, and he did not have time to wait for Deputy Loomis.  *Id.* at 103–04.

According to Loomis, plaintiff drove for a mile before pulling over.  Dkt. No. 67-15 ("Loomis Aff.") ¶¶ 44–45.  Once plaintiff pulled over, Deputy Loomis exited his vehicle, but by the time he reached the rear bumper of plaintiff's car, plaintiff sped off.  *Id.* ¶¶ 46–49.  Then, Deputy Loomis re-entered his vehicle, called for backup, and proceeded after plaintiff.  *Id.* ¶¶ 50–51.  Plaintiff did not stop until he reached the location of the emergency.  Deputies' SMF ¶ 67.  It was not until Deputy Loomis arrived that he realized it was the scene of an emergency call.  *Id.* ¶ 68.

Plaintiff claims that he tried to exit his vehicle, but Deputy Loomis approached and leaned against the driver-side door so that plaintiff could not get out.  Kuiken Dep. at 106.  According to plaintiff, Loomis yelled: "Where are you going?" in a sarcastic tone.  *Id.*  Then, Deputy Loomis lectured plaintiff about using his personal vehicle to respond to emergencies.  *Id.*

Plaintiff told Deputy Loomis that he needed to go into the home to assist with the call. *Id.* at 107. In response, Deputy Loomis demanded plaintiff's license, registration, and proof of insurance, and plaintiff complied. *Id.* at 107–08. Deputy Loomis continued to lecture plaintiff about the use of his personal vehicle and made reference to Tracy's complaint against him from the day before. *Id.* at 108–09. Until then, plaintiff had been unaware of Tracy's complaint. Tracy SMF ¶ 30.

Deputy Loomis tells a different story. Deputy Loomis testified that plaintiff had already exited his vehicle by the time he arrived. Lloyd Aff., Ex. C, Dkt. No. 68-4 ("Loomis Dep.") at 97. According to Deputy Loomis, he had not realized that plaintiff was the driver until plaintiff exited his vehicle, Loomis Aff. ¶ 57, but according to plaintiff, Deputy Loomis knew that plaintiff was the driver prior to initiating the stop, because Deputy Loomis's license plate reader had pulled up plaintiff's license plate, Dkt. No. 74-11 ("Pl.'s Resp. Deputies' SMF") ¶ 70. Deputy Loomis exited his vehicle, approached plaintiff, and asked for plaintiff's license and registration. Loomis Dep. at 98. Plaintiff indicated that he was going into the home to assist with the emergency call, and Deputy Loomis told him that he could do so, but only after turning over his license and registration. *Id.* at 99–100. Deputy Loomis testified that, after that, plaintiff threw his wallet, which hit Deputy Loomis in the chest before falling to the ground. *Id.* at 104. Deputy Loomis directed plaintiff to pick up the wallet and produce his driver's license. *Id.* at 104–05. Plaintiff complied, and Deputy Loomis told plaintiff that he could go inside to assist with the emergency call. *Id.* at 106–07.

At some point during Deputy Loomis's interaction with plaintiff, Deputy O'Brien arrived as backup. Loomis Dep. at 128–29; Kuiken Dep. at 108–09. When plaintiff went inside to assist with the emergency, Deputy Loomis took plaintiff's documents out to his vehicle, where he

informed Deputy O'Brien that he was going to issue plaintiff tickets for speeding and failing to comply. Loomis Dep. at 128–29; Kuiken Dep. at 108–09. After emergency personnel left the scene, plaintiff returned to his vehicle. Kuiken Dep. at 111–12. Deputy Loomis re-approached and "issued plaintiff one 'Speed in Zone' ticket and one ticket for 'failure to comply with a lawful order.'" Deputies' SMF ¶ 77.

Prior to July 18, 2021, Deputy Loomis claims to have "pulled over approximately five volunteer firefighters/EMS members, responding to emergency calls, in their personal vehicles, with green flashing lights, after he observed them breaking the Vehicle and Traffic law." Deputies' SMF ¶ 80. According to Deputy Loomis, he issued tickets during three of those five stops. *Id.* ¶ 81. Plaintiff was the only member of SVAC that Deputy Loomis had ever ticketed. Loomis Dep. at 113–14.

Plaintiff left the scene of the traffic stop and went directly to the Sheriff's Office to speak with County Sheriff Karl Abrams. Kuiken Aff. ¶ 20. Sheriff Abrams showed plaintiff the complaint that Tracy filed the day before, but refused plaintiff's demand for an investigation into Tracy's complaint. *Id.* Either later that evening or the next day, plaintiff contacted Mulleedy about the incident. Kuiken Dep. at 27. Mulleedy told plaintiff not to respond to any new emergency calls and to "lay low until the heat [wa]s off" from the Sheriff's Office. *Id.*; Kuiken Aff. ¶ 21. "Other than . . . Mulleedy, plaintiff has had no conversations with anyone at SVAC about the events of July 17 and 18, 2021." Tracy SMF ¶ 42.

### C. Aftermath

A month later, feeling that the "heat" was off, plaintiff decided to respond to an emergency call near his house. Kuiken Aff. ¶ 21. Afterwards, Mulleedy called plaintiff and told him not to respond to any more calls until he was instructed to do so. *Id.* "Mulleedy never told plaintiff why he could not respond to emergency calls." Tracy SMF ¶ 9. A couple months after

that, "[plaintiff] was banned from SVAC Zoom meetings and [his] access to a mobile application

that allow[s] First Responders to receive emergency calls was blocked."  *Id.*  "Plaintiff was not

the first member of SVAC to be suddenly 'wiped off the rolls[.]' . . . [Plaintiff]'s neighbor, Marti

Sheen, told plaintiff that the same thing had happened to her a year or two before it happened to

him."  Tracy SMF ¶ 11.

On May 24, 2022, plaintiff appeared in court in connection with the July 18, 2021, traffic

tickets.  Kuiken Aff. ¶ 22.  After rejecting a number of plea deals that would have required him

to plead guilty to traffic infractions, plaintiff eventually agreed to plead guilty to two parking

violations on the advice of his attorney.  *Id.*

Deputy Loomis claims that it was his idea to reduce plaintiff's traffic tickets to parking

violations because he was not "out to issue . . . heavy tickets," and he just wanted plaintiff to

slow down.  Loomis Dep. at 165–66.  Deputy Loomis has never had a personal relationship with

plaintiff and, "[o]ther than issuing plaintiff two traffic tickets on July 18, 2021, Deputy Loomis

had no history of confrontation with plaintiff."  Deputies' SMF ¶¶ 6, 10.  Deputy O'Brien

similarly "had no history of confrontation with plaintiff."  *Id.* ¶ 18.

On July 12, 2022, SVAC held its monthly membership meeting over Zoom.  Dkt. No. 67-

11.  Plaintiff was not in attendance.  *Id.* at 1.  Kuhrt reported that he spoke with plaintiff

regarding his CPR certification, which had expired on December 31, 2021.  *Id.* at 2; *see also*

Kuiken Aff., Ex. B, Dkt. No. 74-9 at 2.  According to Kuhrt, plaintiff indicated that he did not

feel encouraged to recertify due to his age and other responsibilities, and he informed Kuhrt that

he would prefer to resign from SVAC instead.  Dkt. No. 67-11 at 2.  At the July member

meeting, Kuhrt also proposed getting plaintiff a plaque to commemorate 40 years of service with

SVAC. *Id.*  According to plaintiff, he never advised Kuhrt or anyone at SVAC that he intended to retire or resign.  Kuiken Aff. ¶ 21.

"Even though [p]laintiff never retired nor resigned, in July 2022, SVAC leadership showed up at [p]laintiff's house unsolicited and presented him with a framed document recognizing his 41 years of service to the community of Speculator."  Pl.'s Add'l SMF ¶ 177.  According to plaintiff, "[a]fter inquiring about re-certification and resuming service for SVAC, . . . Mulleedy stated to Plaintiff, in words or substance, 'You are no longer any use to me.'" *Id.* ¶ 178.  Then, plaintiff claims that SVAC leadership "demanded that [he] turn in [his] SVAC equipment."  Kuiken Aff. ¶ 21.  "To this day [plaintiff] ha[s] not done so[,] as [he] did not retire or resign from [SVAC]." *Id.*

Aside from the subject incident, the Hamilton County Sheriff's Department produced evidence of just one instance—on June 2, 2021—where the "Sheriff's Office or other law enforcement agency issued tickets or effectuated an arrest of a member of [SVAC] or [the] Speculator Volunteer Fire Department responding to an emergency."  Pl.'s Resp. to Deputies' SMF ¶ 81.  On that occasion, Deputy O'Brien issued a traffic ticket to Leland Vandervort, a 69-year-old member of SVAC, for the improper use of a green light.  Deputies' SMF ¶ 33.  Vandervort later testified "that Deputy O'Brien was acting within his authority when issuing the ticket and that he acted 'rightfully so.'" *Id.* ¶ 34.  Vandevort pleaded guilty to the charged violation. *Id.* ¶ 35.

## III.    LEGAL STANDARD

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over

a material fact is considered "genuine" when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.* In conducting this analysis, the court must view

the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Id.* at

255. Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

"'The party seeking summary judgment bears the burden of establishing that no genuine

issue of material fact exists,' but 'when the burden of proof at trial would fall on the nonmoving

party, it ordinarily is sufficient for the movant to point to' an absence of evidence 'on an

essential element of the nonmovant's claim.'" *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d

Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).

## IV.    DISCUSSION

Plaintiff asserts a § 1983 equal protection claim and state law claims for tortious

interference with business relations and violations of New York Civil Rights Law § 79-n against

Tracy and the Deputy defendants. Dkt. No. 8 ("Am. Compl."). He also asserts a state law

defamation claim against Tracy. *Id.* Defendants have moved for summary judgment on all of

plaintiff's claims. Dkt. No. 67-18 ("Deputies' Mem."); Dkt. No. 68-15 ("Tracy Mem.").

Plaintiff opposes summary judgment. Dkt. No. 74-13 ("Pl.'s Opp. Deputies'"); Dkt. No. 75-13

("Pl.'s Opp. Tracy").

### A.  Equal Protection Claims

"The Fourteenth Amendment to the United States Constitution declares that '[n]o State

shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Brown v.*

*City of Oneonta, N.Y.*, 221 F.3d 329, 336–37 (2d Cir. 2000) (quoting U.S. Const. amend. XIV,

§ 1.).  "The Equal Protection Clause requires that the government treat all similarly situated

people alike."  *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  To

establish a prototypical "equal protection violation, claimants must prove purposeful

discrimination . . . directed at . . . [a] suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d

Cir. 1995).

>    Plaintiff claims that Tracy and the Deputy defendants:

>    individually and collectively violated rights guaranteed to Plaintiff under the Equal
>    Protection Clause of the Fourteenth Amendment to the United States Constitution
>    in that Plaintiff was discriminated against because of his age and disability and/or
>    perceived disability. At all times relevant [t]hereto, Defendants acted with ill will
>    toward Plaintiff because of his age and disability and/or perceived disability.

Am. Compl. ¶ 42.

>    Neither age nor disability status[1] are suspect classifications under the Equal Protection

clause.  *T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 86 n.4 (2d Cir. 2024)

("[G]overnment regulations affecting disabled individuals do not receive elevated scrutiny."),

*cert. denied*, 145 S. Ct. 2700 (2025); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000)

("[A]ge is not a suspect classification under the Equal Protection Clause").

>    "[A]lthough the prototypical equal protection claim involves discrimination against

people based on their membership in a vulnerable class," the Second Circuit "ha[s] long

recognized that the equal protection guarantee also extends to individuals who allege no specific

class membership but are nonetheless subjected to invidious discrimination at the hands of

government officials."  *Harlen Assocs.*, 273 F.3d at 499.  "Where, as here, a plaintiff does not

---

[1] Notwithstanding the allegation in plaintiff's amended complaint that, "[p]laintiff is disabled under the law," *see* Am. Compl. ¶ 14, it undisputed that plaintiff does not have a disability.  See Dkt. No. 75-11 ("Pl.'s Resp. to Tracy SMF") ¶ 12; *see also* Kuiken Dep. at 219–20 ("I had no disability. I don't know where you got that from . . . I never claimed any kind of disability.").

claim to be a member of a constitutionally protected class, he may bring an Equal Protection

claim pursuant to one of two theories: (1) selective enforcement [or prosecution], or (2) 'class of

one.'" *AYDM Associates, LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016),

*aff'd*, 692 F. App'x 78 (2d Cir. 2017) (summary order) (internal quotation omitted).

Because plaintiff has consistently characterized his equal protection claim as a selective

prosecution claim, *see* Pl.'s Opp. Tracy at 17 (citing standard for selective prosecution claim);

Pl.'s Opp. Deputies' ("Plaintiff's selective prosecution claim . . . "), the Court addresses that

theory first.

### 1. Selective Prosecution

Tracy and the Deputy defendants argue that they are entitled to summary judgment on

plaintiff's selective prosecution claim.  Tracy Mem. at 21–24; Deputies' Mem. at 18–23.

Plaintiff disagrees.  Pl.'s Opp. Tracy at 16–18; Pl.'s Opp. Deputies at 20–22.

To prevail on a selective prosecution claim a plaintiff must prove that:

(1) the [plaintiff], compared with others similarly situated, was selectively treated,
and (2) the selective treatment was motivated by an intention to discriminate on the
basis of impermissible considerations, such as race or religion, to punish or inhibit
the exercise of constitutional rights, or by a malicious or bad faith intent to injure
the person.

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995).

### i. The Deputy defendants

The Deputy defendants argue that they are entitled to summary judgment on plaintiff's

selective prosecution claim because plaintiff has not identified similarly situated comparators,

and there is insufficient evidence to create an inference that the Deputy defendants acted upon

impermissible considerations or harbored any ill will towards plaintiff.  Deputies' Mem. at 19–

23.  In opposition, plaintiff maintains that he was treated differently than other "similarly situated

first responders," and that the Deputy defendants maliciously discriminated against him by "not

subjecting younger members of [SVAC] . . . to traffic stops or criminal prosecution when responding to emergency calls."  Pl.'s Opp. Deputies' at 20.

### a. **Similarly Situated Comparators**

"[A] plaintiff alleging a claim of selective *prosecution* in violation of the Equal Protection Clause must plead and establish the existence of similarly situated individuals who were not prosecuted; that is because courts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute."  *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001).

Plaintiff has not identified a single similarly situated individual who was treated differently than him.  *See* Pl.'s Add'l SMF; Pl.'s Opp. Deputies'.  Instead, plaintiff attacks the Deputy defendants' claim that they equally applied the law:

> Defendants' attempts to refute the disparate treatment further exemplify the disparate treatment. While they claim that they applied the vehicle and traffic law equally, Defendants' self-serving denials fall apart under any scrutiny . . . Defendants support their assertion of equal application of the law by pointing to Leland Vandervort. Mr. Vandervort was another elderly member of SVAC who was also given a ticket while using a green first responder light. No other individuals were identified to support this claim; not even one younger first responder. Mr. Vandervort was the only individual identified by Hamilton County in response to Plaintiff's subpoena and Defendants have not identified any other individuals throughout the pendency of this litigation.

Pl.'s Opp. Deputies' at 21–22.

Plaintiff's argument is unavailing for two reasons.  First, because it is plaintiff's burden to establish that he was treated differently than other similarly situated individuals.  *See Pyke*, 258 F.3d at 109 ("[A] plaintiff alleging a claim of selective prosecution . . . must plead and establish the existence of similarly situated individuals who were not prosecuted."); *Hu v. City of N.Y.*, 927 F.3d 81, 91 (2d Cir. 2019) ("[P]laintiff must prove that '(1) [he], compared with others similarly situated, was selectively treated . . .'" (quoting *Zahra v. Town of Southold*, 48 F.3d 674,

683 (2d Cir. 1995)).  Second, because even had plaintiff identified similarly situated individuals, he must still show that the Deputy defendants knew that those individuals had committed similar traffic violations, but did not ticket them.  *See LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999) ("Absent a showing that the [defendant] knew of other violations, but declined to prosecute them, [a plaintiff] would ordinarily be unable to show that [they were] treated selectively.").

As plaintiff points out, "the law does not require detailed *pleadings* regarding the similarly situated comparators."  Pl.'s Opp. Deputies' at 20 (emphasis added).  And "as 'a general rule[,]' . . . the determination of 'whether [individuals] are similarly situated is a factual issue that should be submitted to the jury.'"  *Thomas v. Genova*, 2025 WL 583182, at *3 (2d Cir. Feb. 24, 2025) (summary order) (quoting *Harlen Assocs.*, 273 F.3d at 499 n.2).  Still, "[the Second Circuit] ha[s] recognized that 'a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.'"  *Thomas*, 2025 WL 583182, at *3 (quoting *Harlen Assocs.*, 273 F.3d at 499 n.2).

The only similarly situated individual identified by any party is Vandevort and, as plaintiff admits, Vandevort "was also given a ticket while using a green first responder light."  Pl.'s Opp. Deputies' at 21.  Plaintiff speculates—based on evidence that the only SVAC members ticketed for traffic violations while using green courtesy lights were over the age of 65—that the Deputy defendants must have been aware of younger SVAC members who committed similar violations, but chose not to ticket them.  *Id.* at 22 ("Defendants['] evidence *supports* the conclusion that *only* elderly members of SVAC are ticketed.") (emphasis in original).

This is not enough to survive summary judgment. *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12 (2d Cir. 1999) (upholding lower court's grant of summary judgment where the nonmoving party adduced nothing more than speculation to support its selective prosecution claim); *Harlen Assocs.*, 273 F.3d at 502 (same). In all, plaintiff has failed to demonstrate the existence of sufficient evidence from which a rational jury could conclude that the Deputy defendants were aware of similarly situated individuals, but declined to prosecute them.

### b. Motivated by Impermissible Considerations

Even if plaintiff had adduced evidence of a similarly situated comparator, the Deputy defendants argue that his selective prosecution claim still must fail, because the record contains no evidence that the Deputy defendants prosecuted plaintiff based on malice or ill will towards plaintiff. Deputies' Mem. at 20–23. In opposition, plaintiff maintains that a jury could reasonably infer that the Deputy defendants ticketed him based on a bad faith intent to injure him due to his age. Pl.'s Opp. Deputies' at 22.

The second prong of a selective prosecution claim requires a plaintiff to show that they were singled out for prosecution "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). "Although the issue of whether an action was motivated by malice generally is a question of fact properly left to the jury, [the Second Circuit] will uphold a grant of summary judgment where the nonmoving party adduces nothing more than speculation to support its claims." *Harlen Assocs.*, 273 F.3d at 502. "[W]here no invidious discrimination or interference with the exercise of other express

constitutional rights has occurred, the malice/bad faith standard should be scrupulously met."
*LeClair*, 627 F.2d at 611.

Plaintiff concedes that he had no history of confrontation with the Deputy defendants prior to July 18, 2021.  Deputies' SMF ¶¶ 10, 18.  And unlike Tracy, whom plaintiff observed making derogatory age-related comments, Kuiken Dep. at 217–18, plaintiff does not claim that the Deputy defendants exhibited any age-based animus.  *Cf.* Pl.'s Opp. Deputies' at 17 ("Tracy's exhibited animus toward elderly members of SVAC may be imputed to the [Deputy] [d]efendants.").  Still, plaintiff insists that a jury could find the requisite ill will, based on evidence that Deputy Loomis acted unprofessionally during the traffic stop and disregarded a policy of leniency towards first responders.  Pl.'s Opp. at 20–21.

Contrary to plaintiff's contentions, neither the fact that Deputy Loomis behaved rudely during the traffic stop, nor evidence of a policy of leniency towards first responders,[2] create an inference that Deputy Loomis prosecuted plaintiff based on ill will or a bad faith intent to injure him.  *See LeClair*, 627 F.2d at 611 (holding that inspector did not suspend a farm's license out of malice despite evidence that the inspector was in a spiteful mood and conducted unusually rigorous inspection); *Diesel v. Town of Lewisboro*, 232 F.3d 92 (2d Cir. 2000) (holding that a police officer was not entitled to the "professional courtesy" of having his fellow police officers look the other way or otherwise work on his behalf to mitigate criminal charges); *Brown v. City of Syracuse*, 673 F.3d 141 (2d Cir. 2012) (holding same);

---

[2] The record evidence indicates that any policy of leniency towards first responders did not apply to volunteer first responders utilizing green courtesy lights, like plaintiff.  Notwithstanding plaintiff's personal beliefs to the contrary, Tracy SMF ¶ 47, SVAC policy explicitly provides that drivers utilizing a green courtesy light must abide by all rules of the road, as they are not exempt from complying with New York State Vehicle and Traffic Law, Deputies' SMF ¶ 25.

In sum, there is not sufficient evidence in the record to establish that the Deputy defendants prosecuted plaintiff based on malice or a bad faith intent to injure him. And even if it could be reasonably inferred that the Deputy defendants harbored ill will towards plaintiff, plaintiff cannot proceed to trial on his selective prosecution claim without evidence of a similarly situated individual who the Deputy defendants knew of, but declined to prosecute. *See supra* Point IV.A.1.i.a.

### ii. Tracy

Tracy argues that he is entitled to summary judgment on plaintiff's selective prosecution claim because: (1) he is not a state actor; (2) he was not involved in the issuance of the July 18, 2021, traffic tickets; (3) plaintiff has not identified a similarly situated comparator; and (4) there is no evidence of ill will or animosity between Tracy and plaintiff. Tracy Mem. at 21–24. In opposition, plaintiff maintains that: (1) Tracy acted under color of state law by engaging in joint activity with the Deputy defendants; (2) plaintiff was ticketed just one day after Tracy filed his complaint; (3) plaintiff is not required to identify similarly situated comparators in great detail; and (4) Tracy has exhibited age-based animus towards others, which could support an inference that he falsely reported plaintiff due to his age. Pl.'s Opp. Tracy at 16–18.

### a. State Actor

First, Tracy argues that he is not subject to liability under § 1983, because he filed his complaint against plaintiff as a concerned private citizen, and the record evidence does not create an inference that he engaged in joint activity with the Deputy defendants. Tracy Mem. at 21–23. In opposition, plaintiff maintains that, regardless of whether Tracy is a private citizen, his conduct could fairly be considered state action, because he acted in concert with state actors, *i.e.*, the Deputy defendants. Pl.'s Opp. Tracy at 16–17.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Kia P. v. McIntyre*, 235 F.3d 749, 755 (2d Cir. 2000) (internal quotations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (internal quotations omitted). "[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970)). "A private actor can only be 'a willful participant in joint activity with the State or its agents' if the two share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014).

Plaintiff primarily argues that Tracy's alleged conduct constitutes state action because, by falsely reporting plaintiff to the Deputy defendants, Tracy became a willful participant in their selective prosecution of plaintiff. Pl.'s Opp. Tracy at 16 ("Tracy was acting under color of state law by acting in concert with [the Deputy defendants].").

The "provision of background information to a police officer does not by itself make [a private actor] a joint participant in state action under Section 1983." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999). "Where . . . a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render [the private party] a state actor under Section 1983." *Id.*

On July 17, 2021, Tracy filed a complaint with Deputy O'Brien regarding plaintiff's allegedly unsafe driving earlier that day. Tracy SMF ¶ 69. Though Tracy indicated that he

wanted to pursue a criminal complaint against plaintiff, *see* Groudine Aff., Ex. J, Dkt. No. 67-12 at 3, the Deputy defendants informed Tracy that the Sheriff's Office could not file charges based on Tracy's allegations, Tracy SMF ¶¶ 75,[3] 113; Loomis Dep. at 54; O'Brien Dep. at 62; Tracy Dep. at 98–99. The next day, Deputy Loomis ticketed plaintiff for speeding and for failing to comply with a lawful order. Deputies' SMF ¶ 77. It is undisputed that Deputy Loomis observed plaintiff speeding and witnessed him drive away from a traffic stop on July 18, 2021. *Id.* ¶¶ 59, 64.

Just as the Deputy defendants exercised independent judgment in declining to prosecute plaintiff based on Tracy's complaint, the undisputed evidence establishes that Deputy Loomis decided to pull plaintiff over only after observing him speeding and confirming that observation with a radar.

Courts have also found joint activity sufficient to render private conduct state action where the private actors and agents of the state "carried out a deliberate, previously agreed upon plan," or their activity "constitute[d] a conspiracy or meeting of the minds." *Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984).

Those circumstances are not present here. Deputy Loomis communicated to Tracy that the Sheriff's Office could not issue plaintiff a traffic ticket based on his complaint. Tracy SMF ¶ 113. The next day, Deputy O'Brien reiterated the same. *Id.* ¶ 75. The fact that both Deputy defendants communicated to Tracy that the Sheriff's Office would not charge plaintiff based on

---

[3] Plaintiff objects, on hearsay grounds, to Tracy's assertion that, "[o]n the morning of July 18, 2021, Deputy O'Brien told Mr. Tracy that no charges were being filed against the plaintiff concerning the events described by Mr. Tracy in his July 17, 2021[,] statement." Tracy SMF ¶ 75. However, "a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice." *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013). Deputy O'Brien's statement is not offered for the truth of the matter asserted, *i.e.*, that the Sheriff's Office was not filing charges based on plaintiff's allegedly unsafe driving on July 17, 2021, instead, it serves the non-hearsay purpose of demonstrating that Tracy did not believe that the Sheriff's Office was going to ticket plaintiff based on Tracy's complaint.

his complaint supports a reasonable inference that there was no "meeting of the minds" between Tracy and the Deputy defendants. Moreover, because plaintiff has not presented evidence that Deputy Loomis or Deputy O'Brien communicated with Tracy about plaintiff after they informed him that they would not be filing charges, it cannot be inferred that Deputy Loomis carried out a "deliberate, previously agreed upon plan" when he ticketed plaintiff based on plaintiff's admitted infractions on July 18, 2021.

Accordingly, there is insufficient evidence to establish that Tracy engaged in joint action with the Deputy defendants sufficient to render his alleged conduct "state action."[4]

### b. Merits

Even if there was sufficient evidence to find that Tracy's alleged conduct constituted state action, plaintiff's selective prosecution claim against him fails for the reasons discussed *supra*.[5] *See* Point IV.A.1.i.a.

### 2. Class of One

Defendants additionally argue that, "[s]hould . . . plaintiff pivot and claim that he is proceeding . . . under a 'class of one' Equal Protection analysis, the claim must nonetheless fail." Tracy Mem. at 24; Deputies' Mem. at 19 ("For the same reasons, if plaintiff asserted an Equal Protection Claim under the 'class of one' theory his claim would fail."). Though plaintiff does

---

[4] Plaintiff's claim that Tracy fabricated the allegations in his complaint does not compel a different outcome. *See Betts*, 751 F.3d at 86 (holding allegations that a plaintiff was criminally charged based upon a "false accusation . . . made against him by a private citizen to the police . . . insufficient to state a plausible claim that [the private citizen] and the arresting officers shared a common goal of violating [the plaintiff's] rights."). And even assuming Tracy's complaint was false, plaintiff has not presented any evidence to suggest that either of the Deputy defendants *knew* that Tracy's complaint was false.

[5] Although there is some evidence of generalized age-based animus on Tracy's part, there is no evidence that Tracy ever made derogatory age-based remarks about anyone other than Mulleedy, and plaintiff admittedly never perceived any animosity between himself and Tracy prior to July 17, 2021. Tracy SMF ¶ 38.

not appear to premise his equal protection claim on a "class of one" theory, the Court agrees with

defendants that, even if he did, that claim would fail.

To prevail on "class of one" equal protection claim:

[A] plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) (internal

quotation marks omitted).

"A class-of-one claim . . . fails when the party raising the claim cannot show that 'the

decisionmakers were aware that there were other similarly-situated individuals who were treated

differently.'" *Peterson v. Bank Markazi*, 121 F.4th 983, 1008 (2d Cir. 2024) (quoting *Analytical*

*Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 143 (2d Cir. 2010)), *cert. denied sub nom.*

*Clearstream Banking, S.A. v. Peterson*, 145 S. Ct. 2819 (2025).  "[T]he similarity standard for

a[ ] [class of one] claim is more stringent than the standard for a [selective prosecution] claim."

*Hu*, 927 F.3d at 93.  Indeed, the Second Circuit has "held that class-of-one plaintiffs must show

an extremely high degree of similarity between themselves and the persons to whom they

compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (Sotomayor,

J.).

The only similarly situated individual identified in the record is Vandevort, "who was

also given a ticket while using a green first responder light."  Pl.'s Opp. Deputies' at 21.

Because plaintiff has not identified a similarly situated individual who defendants treated

differently than plaintiff, no rational jury could find for plaintiff under a "class of one" theory.

### B. Remaining State Law Claims

The Court has dismissed plaintiff's sole federal claim, *see* supra Point IV.A, leaving only plaintiff's state law claims against defendants.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . .—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023) (holding same); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

"There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." *United Mine Workers of Am.*, 383 U.S. at 727. No such policy implications are present here.

Accordingly, in the absence of federal claims or issues implicating federal policies, the Court declines to exercise supplemental jurisdiction and dismisses plaintiff's state law claims, without prejudice to renewal in state court.

### V.    CONCLUSION

Therefore, it is

**ORDERED** that

1. Defendants' motions for summary judgment are **GRANTED** as to plaintiff's §1983 Equal Protection claim; and

2. Plaintiff's remaining state law claims are **DISMISSED**, without prejudice to renewal in state court.

The Clerk of the Court is directed to:

    a. Terminate the pending motions (Dkt. Nos. 67 & 68);

    b. Enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:  February 26, 2026
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge